**John PRENTZLER, Respondent,**

**Stephen J. Reuter, Respondent,**

**Peggy Northcott, et al., Respondents,**

**Tiffany Francis, et al.,**

v.

**Robin CARNAHAN, et al., Respondents,**

**George Dennis Shull and Jerry Stockman, Appellants.**

Nos. WD 74866 to WD 74869.

Missouri Court of Appeals, Western District.

March 26, 2012.

Heidi D. Vollet, for Appellants.

Edward D. Greim, for Respondent Prentzler.

Michael Shabsin, for Respondent Reuter.

Nicholas Fry, for Respondents Francis and Hoover.

Before Special Division: JOSEPH M. ELLIS, Presiding Judge, KAREN KING MITCHELL, Judge and MARK D. PFEIFFER, Judge.

JOSEPH M. ELLIS, Judge.

Appellants Dennis Shull and Jerry Stockman appeal from four judgments entered by the Circuit Court of Cole County denying their motions to intervene as a matter of right in four separate lawsuits that challenge the ballot title and fiscal note of a ballot initiative petition concerning consumer credit loans. The cases have been consolidated for purposes of this appeal. For the following reasons, the judgments are affirmed.

Missouri citizens have a constitutional right "to propose and enact or reject laws and amendments to the constitution by the initiative." Mo. Const. art. III, § 49. Missouri citizens also have a statutory right "to challenge the official ballot title[1] or the fiscal note" of any initiative petition certified by the Missouri Secretary of State by bringing an action in the Circuit Court of Cole County. § 116.190.1.[2] In each of the cases in which Appellants seek to intervene, Missouri citizens have chal-

---

1. An official ballot title consists of a summary statement of the initiative petition and a summary of the initiative's fiscal note. § 116.180. The official ballot title must be attached to the initiative petition as it is circulated for signatures. § 116.010(4).

2. All statutory citations are to RSMo 2000 unless otherwise noted.

lenged the ballot title or fiscal note of an initiative petition concerning consumer credit that has been certified by the Missouri Secretary of State for the November 2012 ballot. As required by statute, the Missouri Secretary of State Robin Carnahan and the Missouri State Auditor Thomas Schweich are the named party defendants. *See* § 116.190.2.

In August of 2011, opponents of an initiative petition that would reduce the annual interest rate for payday, title, installment and other consumer credit loans to 36% annually ("the Consumer Credit Initiative Petition") filed four separate lawsuits ("the Industry Suits")[3] in the Circuit Court of Cole County challenging the sufficiency and fairness of the Consumer Credit Initiative Petition's ballot title and fiscal note. In September 2011, Appellants George Shull and Jerry Stockman sought to intervene in support of the ballot title and fiscal note in two of the four Industry Suits, asserting they should be permitted to intervene as of right, or, in the alternative, permissively, because they had signed and contributed money to the Consumer Credit Initiative Petition. In October of 2011, the trial court entered orders granting Appellants permissive intervention in those two Industry Suits. In December of 2011, Appellants sought to intervene as a matter of right in the other two Industry Suits. Appellants also motioned the trial court to change the basis for intervention in the other two Industry Suits from permissive intervention to intervention as of right.

On February 23, 2012, the trial court entered a "Final Judgment on Intervention" in each of the four Industry Suits. As a result of the four final judgments, Appellants were dismissed from the two

cases in which they were initially granted intervention and their motions for intervention as of right into the other two Industry Suits were denied. The trial court concluded in each of the four final judgments that because Appellants sought "to defend the ballot title and fiscal note for the subject Initiative in the exact form they were issued and approved by [the] Secretary of State and State Auditor, [Appellants] have failed to show how their interests will not be protected by the Secretary of State and Auditor." The circuit court also stated that "all factual allegations set forth in the affidavits submitted by Shull and Stockman in this case" were accepted as true.

Appellants were granted leave to participate as amicus curiae and file briefing consistent with that status. Appellants appeal from the final judgments on intervention entered in each of the four Industry Suits.

■ Appellants assert that the trial court erred in denying their motions to intervene as a matter of right. "Denial of a motion for leave to intervene as a matter of right under Rule 52.12 will be affirmed by an appellate court unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." *State ex rel. Nixon v. Am. Tobacco Co.*, 34 S.W.3d 122, 126 (Mo. banc 2000).

■ Appellants contend they were entitled to intervene as a matter of right pursuant to Rule 52.12(a). Rule 52.12(a) provides that, in the absence of a statute conferring an unconditional right to intervene, the proposed intervenor must establish three elements: "(1) an interest relating to the property or transaction which is

---

**3.** The Industry Suits are (1) *Prentzler v. Carnahan, et al.*, Case No. 11AC–CC00549; (2) *Reuter v. Carnahan, et al.*, Case No. 11AC– CC00552; (3) *Northcott v. Carnahan, et al.*, Case No. 11AC–CC00557; and (4) *Francis v. Carnahan, et al.*, Case No. 11AC–CC00546.

the subject of the action; (2) that the applicant's ability to protect the interest is impaired or impeded; and (3) that the existing parties are inadequately representing the applicant's interest." *Id.* at 127 (internal quotations omitted). The proposed intervenor "carries the burden of establishing the presence of all three elements required for intervention as a matter of right." *Kinney v. Schneider Nat'l Carriers, Inc.,* 200 S.W.3d 607, 611 (Mo. App. W.D.2006) (internal quotation omitted). An applicant's right to intervene is absolute, and the motion to intervene may not be denied when the applicant establishes each of the three elements. *Am. Tobacco Co.,* 34 S.W.3d at 127. Alternatively, "a motion to intervene as of right under Rule 52.12(a)(2) may properly be denied if even one of these three elements is not established." *Kinney,* 200 S.W.3d at 611.

■ The trial courts' final judgments on intervention in each of the four Industry Suits state that because Appellants Shull and Stockman sought "to defend the ballot title and fiscal note for the subject Initiative in the exact form they were issued and approved by [the] Secretary of State and State Auditor, [Appellants] have failed to show how their interests will not be protected by the Secretary of State and Auditor." Thus, we will first address whether the State defendants adequately represent Appellants' interests in the underlying § 116.190 actions.

Appellants assert that the trial court misapplied the law in assuming that the State defendants would adequately protect their interests in the underlying litigation solely because Appellants, like the State defendants, sought to defend the current language of the initiative petitions. Appellants rely upon *Toombs v. Riley,* 591 S.W.2d 235, 237 (Mo.App. W.D.1979), for the proposition that inadequate represen-

tation requires only "a 'minimal showing' that the representation 'may be' inadequate." Appellants contend that the "minimal showing" standard set out in *Toombs* means Appellants need only to establish that there is a minimal "divergence of interest" between them and the State defendants in order to show their interests may be inadequately represented by the State defendants. *See Alsbach v. Bader,* 616 S.W.2d 147, 151 (Mo.App. E.D.1981) (stating that "[t]he determination of whether a proposed intervenor's interest is adequately represented by an original party to an action usually turns on whether there is an identity or divergence of interest between the proposed intervenor and the party"). Appellants, however, have taken the standard intimated in *Toombs* out of context.

The court in *Toombs* states that "where the first two requisites for [intervention as of right] are met, the third element requires only the 'minimal showing' that the representation 'may be' inadequate." 591 S.W.2d at 237. Thus, before the "minimal showing" standard can be applied, Appellants must show that they have satisfied the first two elements of intervention as of right. In examining the first element of intervention as of right, Appellants have failed to establish that, as mere supporters and signatories of an initiative petition, they have a sufficient interest in the underlying § 116.190 actions.

■ The first element of intervention as of right requires "an interest relating to the property or transaction which is the subject of the action." *Am. Tobacco Co.,* 34 S.W.3d at 127. An interest, for purposes of intervention as of right, "means a concern, more than mere curiosity, or academic or sentimental desire." *In re Liquidation of Prof'l Med. Ins. Co.,* 92 S.W.3d 775, 778 (Mo. banc 2003). "One interested in an action is one who is concerned in the

outcome or result thereof because he has a legal right which will be directly affected thereby or a legal liability which will be directly enlarged or diminished by the judgment or decree in such action." *In re Adoption of H.M.C.*, 11 S.W.3d 81, 90 (Mo. App. W.D.2000) (internal quotation omitted). "An interest necessary for intervention as a matter of right does not include a mere, consequential, remote or conjectural possibility of being affected as a result of the action, but must be a direct claim upon the subject matter such that the intervenor will either gain or lose by direct operation of judgment." *Am. Tobacco Co.*, 34 S.W.3d at 128. Thus, "[t]o intervene as a matter of right, [the proposed intervenor's] interest in the action must be a direct and immediate claim to, and have its origin in, the demand made or the proceeds sought or prayed by one of the parties to the original action." *In re Clarkson Kehrs Mill Transp. Dev. Dist.*, 308 S.W.3d 748, 753 (Mo.App. E.D.2010) (internal citation omitted).

Appellants aver that they have a sufficient interest for purposes of intervention as of right because, as signatories and supporters of the Consumer Credit Initiative Petition, they have a personal interest in the validity of the initiative petition, in seeing the initiative circulated and qualified for the November 2012 ballot, and in having their signatures counted as valid. However, such interests do not establish that Appellants have a direct and immediate claim upon the subject matter of the underlying § 116.190 actions in which they seek to intervene.

▮ Section 116.190 litigation permits Missouri citizens to challenge an initiative petition on the basis that its ballot title or fiscal note are insufficient or unfair. § 116.190.3. A ballot title or fiscal note is unfair or insufficient when it states the consequences of the initiative inadequately and with bias, prejudice, deception and/or favoritism. *State ex rel. Humane Soc'y of Mo. v. Beetem*, 317 S.W.3d 669, 673 (Mo. App. W.D.2010). Thus, Missouri courts serve the limited function in § 116.190 cases of determining whether the official ballot title or fiscal note "is insufficient or unfair such that it likely creates prejudice for or against the measure." *Id.* In fact, "[p]rior to presentation of an initiative to the people, courts may consider only procedural or ballot issues that have a bearing upon the integrity of the election itself." *State ex rel. Trotter v. Cirtin*, 941 S.W.2d 498, 500 (Mo. banc 1997). Therefore, the court's "single function is to ask whether the constitutional requirements and limits of power, as expressed in the provision relating to the procedure and form of initiative petitions, have been regarded." *Missourians to Protect the Initiative Process v. Blunt*, 799 S.W.2d 824, 827 (Mo. banc 1999).

Given that the limited purpose of ballot initiative challenges is to ensure the fairness and sufficiency of ballot titles and fiscal notes, Appellants' proposed interests in having their signatures count and qualifying the initiative for the ballot are not at issue in the underlying litigation. Thus, Appellants have no direct or immediate interest in the underlying subject matter of the litigation. They neither alleged nor did they demonstrate that they have any direct personal or business interest in the passage or defeat of the Consumer Credit Initiative Petition. Nonetheless, Appellants assert their legal rights and interests will be directly affected by the underlying litigation because the Industry Suit plaintiffs are seeking to invalidate the signatures collected thus far, including Appellants'. However, Appellants have cited no case law supporting that proposition.

Furthermore, Appellants claimed interest in having their signatures counted is

too remote and conjectural to justify intervention as of right because, regardless of the outcome of the underlying § 116.190 litigation, Appellants are not ensured the right to have their signatures counted. Nothing prevents the proponents or petitioners of an initiative petition from withdrawing the initiative petition before the submission deadline. Likewise, if the petitioner of an initiative petition fails to meet the submission deadline or fails to file the signed petitions in accordance with the procedures set out in § 116.100, the Secretary of State has the right to reject the petition as insufficient. Thus, Appellants have no control over whether their signatures will ultimately be counted for purposes of qualifying the initiative petition for the ballot regardless of the outcome of the Industry Suits. Therefore, Appellants' alleged interest in having their signatures counted for purposes of qualifying the initiative petitions for the ballot is too remote and attenuated for purposes of intervention as a matter of right.

Appellants also rely upon *Brown v. Wyrick*, 626 S.W.2d 674 (Mo.App. W.D.1981), *Maries County Bank v. Hoertel*, 941 S.W.2d 806 (Mo.App. S.D.1997), and several federal cases[4] to support their claim that they have a sufficient interest to intervene as a matter of right. These cases, however, only further demonstrate that Appellants lack the requisite direct and immediate claim upon the underlying litigation required to establish an interest for purposes of intervention as of right.

In *Brown*, two Missouri inmates each filed suit in order to change his respective name to one that more accurately reflected his ancestral heritage. 626 S.W.2d at 675. The warden of the Missouri State Penitentiary, the director of the Missouri Division of Corrections, the superintendent of the Missouri State Highway Patrol, and the State of Missouri were granted leave to intervene as a matter of right in each of the cases. *Id.* We held that the intervenors possessed a requisite interest justifying intervention as of right because the intervenors presented evidence that the name changes would cause the intervenors to incur expense in modifying inmates' records and could also create confusion in the operation of correctional institutions and the checking of warrants and wanted notices by law enforcement officers. *Id.* at 677. We also indicated that "the statutorily prescribed duties" of some of the intervenors would also support their claimed interest in the subject matter of the litigation. *Id.* Thus, the legal rights of the intervenors in *Brown* would be directly and immediately affected by the outcome of the inmates' suits to change their names.

In *Hoertel*, the Bank of St. Elizabeth sought to intervene in a proceeding the Maries County Bank had filed against a debtor seeking to place the debtor's property in a constructive trust. 941 S.W.2d at 807. On appeal, the court found that the Bank of St. Elizabeth, which had previously purchased the property at an execution sale and had since conveyed the land to a third party, had an interest sufficient for purposes of intervention because the Bank of St. Elizabeth would face legal liability under its warranty of good title from the adjudication of the claim in which it sought to intervene. *Id.* at 809. Thus, because the intervenor could face potential legal liability based upon the outcome of the case, the intervenor had a sufficient interest in intervening in the underlying action. *Id.* at 809–10.

4. *See Sierra Club v. Glickman*, 82 F.3d 106, 109 (5th Cir.1996); *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994 (8th Cir.1993); *Miller v. Blackwell*, 348 F.Supp.2d 916, 918 (S.D.Ohio 2004).

The intervenors in *Hoertel* or *Brown* were each able to establish that the outcome of the underlying litigation would either impose a legal liability on the intervenor or directly impact the intervenor's legal interests thus giving them a direct and immediate claim in the action in which they sought to intervene. Appellants have failed to show any such immediate or direct claim in the underlying Industry Suits, as they have not established how the outcome of those cases will cause them to incur any legal liability or directly affect their legal rights as supporters of the Consumer Credit Initiative Petition. Thus, it becomes inconsequential whether the State defendants adequately represent the interests of Appellants, as they have failed to establish that they have a sufficient interest in the outcome of the underlying litigation by merely signing and supporting an initiative petition.

We note that the trial court stated that a "citizen of this State who has differing political views [from] Plaintiff, as such views relate to the Ballot Initiative, does have an interest in litigation concerning the Initiative." We recognize that Missouri courts have held that Rule 52.12 "should be liberally construed to permit broad intervention." *Underwood v. St. Joseph Bd. of Zoning Adjustment*, No. WD73912, —— S.W.3d ——, 2012 WL 694844, at *4 (Mo.App. W.D. Mar.6, 2012), However, construing the meaning of an interest for purposes of intervention as of right that broadly would completely eviscerate Rule 52.12(a)(2). In *Committee for Educational Equality v. State*, 294 S.W.3d 477 (Mo. banc 2009), the Missouri Supreme Court reviewed the trial court's decision to grant permissive intervention to three taxpayers seeking to join the State's defense of a suit challenging Missouri's school funding formula. In finding the permissive intervention improper, the Court stated:

Applying taxpayer standing to Defendant–Intervenors would open the floodgates to allow all Missouri taxpayers to seek intervention in the State's defense of constitutional and statutory challenges. No public policy is served by allowing intervention premised on a taxpayer's mere interest in the subject matter of a suit. Defendant–Intervenors here could have sought leave to express their views in an amicus brief, rather than through intervention.

*Id.* at 487. The same rationale applies here. Opening intervention of right to citizens solely because they have a differing political view as to the ballot initiative would open the floodgates to oppressive intervention, and no public policy would be served.

In conclusion, viewing the evidence in the light most favorable to the trial court's judgment, Appellants' only interest in the underlying action is as mere signatories of and donors to the Consumer Credit Initiative Petition. As such, based on the record before us, they have failed to establish that they have anything more than a consequential, remote, or conjectural interest in the underlying litigation. Accordingly, the trial court did not err in denying Appellants' motions to intervene as of right in the Industry Suits.

Judgments affirmed.

All concur.